STATE of Missouri, Respondent,

v.

Stephen McCUIN, Appellant.

No. WD 38352.

Missouri Court of Appeals,
Western District.

April 14, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 2, 1987.

Application to Transfer Denied
July 14, 1987.

Susan L. Hogan, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P.J., and KENNEDY and LOWENSTEIN, JJ.

PER CURIAM:

The appellant, Stephen McCuin, was convicted by a jury of possession of a controlled substance about the premises of a correctional institution, § 217.360.1(1), RSMo Supp.1984, and sentenced as a persistent offender to imprisonment for a period of three years.

The judgment is affirmed.

On November 16, 1984, Lt. Charles Little, a guard at the Central Missouri Correctional Center, was making a routine patrol of the facility and entered a bathroom adjoining the institution's gymnasium. There he discovered the appellant, Stephen McCuin, bent over the sink with his hands in front of him. No one else was present

in the six-foot by eight-foot bathroom. Little testified that McCuin, who was facing away from the door, looked over his shoulder with a startled appearance upon hearing someone enter the bathroom. Little ordered McCuin up against the divider between the sink and the toilet in order to conduct a pat-down search. McCuin complied immediately, placing his hands "all the way up to the top" of the divider; on the other side of the divider was the toilet. While he was searching the appellant, Little looked in the bathroom sink and there observed a plastic bag containing what appeared to be marijuana.

At that point, Officer William Schmutz, who had been accompanying Little on the patrol, came into the bathroom. Schmutz assumed control of the appellant while Little searched the bathroom. Little found the corner of an envelope floating in the toilet, containing what appeared to be a "dime bag" of marijuana. At trial, Little explained that inmates would seal about a teaspoonful of marijuana in the corner of an envelope and sell the corner for $10.

Lt. Little confiscated the envelope corner found in the toilet as well as the larger quantity of marijuana from the sink, and escorted McCuin to the facility's segregation unit. McCuin was strip-searched and given a pair of coveralls. The clothes which he had been wearing when Lt. Little discovered him in the gymnasium bathroom were placed in an evidence locker.

McCuin was interviewed regarding the incident by Lt. Robert King, an investigator for the Missouri Department of Corrections. King advised the appellant of his rights; McCuin stated that he understood his rights and signed a waiver. He initially denied possession of the marijuana, claiming that it had been left in the sink by someone else and that he was just about to take some of it when Little entered the bathroom. He then told King that he was selling the marijuana found in the sink for another inmate and expected to be paid about $100 for acting as the distributor.

The Missouri Highway Patrol Laboratory determined that the plastic bag found in the sink contained almost nine grams of marijuana. A trace amount of plant substance was discovered in one of the pockets of McCuin's confiscated trousers. This was also analyzed and determined to be marijuana. At trial, the marijuana taken from the sink and the envelope corner retrieved from the toilet were entered into evidence as State's Exhibit 5, and the minute quantity of marijuana found in McCuin's pants pocket was received in evidence as part of State's Exhibit 9.

McCuin raises two points on appeal. His first assignment of error is that the verdict-directing instruction was fatally defective in that it failed to specify which particular quantity of marijuana (the plastic bag found in the sink, the "dime bag" found in the toilet, or the trace amount found in the pocket of his pants) he was charged with possessing. Second, appellant contends that the evidence was insufficient to support his conviction of the offense charged.

## I

Appellant's first point is denied.

A faulty jury instruction is grounds for reversal only if the defendant has been prejudiced thereby. *State v. Pitchford,* 556 S.W.2d 57, 59 (Mo.App. 1977). Furthermore, even though it is awkwardly worded in light of the evidence presented, an instruction is not prejudicial unless the jury reasonably could be misled or confused by it. *State v. Betts,* 646 S.W.2d 94, 98 (Mo. banc 1983); *State v. Brletic,* 283 S.W.2d 568, 572 (Mo.1955).

The instruction which McCuin challenges here could not possibly have misled or confused the jury regarding which quantity of marijuana was the subject of their verdict. The clear thrust of the evidence presented at trial highlighted McCuin's possession of the larger quantity of marijuana in the plastic bag. It was this marijuana which McCuin admitted to Lt. King he was distributing for another inmate. The envelope corner containing a teaspoonful of marijuana and retrieved from the toilet was not even identified as such at the trial. Furthermore, the trace amount of marijuana recovered from McCuin's trousers was

less than one one-hundredth of a gram and was removed from the pocket with a pair of tweezers. There is no suggestion in the record that the state ever attempted to base McCuin's conviction upon this minute quantity of marijuana. It was clearly introduced as circumstantial corroborative evidence which allowed the jury to infer that McCuin had carried in his pocket the plastic bag of marijuana which he was charged with possessing. There being no reasonable possibility that the jury was confused or misled by the challenged verdict director, there was no prejudicial error in the instruction.

## II

Appellant's second point on appeal is also denied.

McCuin relies upon *State v. Barber*, 635 S.W.2d 342 (Mo.1982), to support his contention that the trial court erred in denying his motion for judgment of acquittal and accepting the jury's verdict of guilty. The defendant in *Barber* was discovered by law enforcement officers in a bedroom of a private residence where over a thousand pills and capsules containing controlled substances had been sorted into individual piles on the floor. There were seven other adults in the house at the time of Barber's arrest, two of them in the bedroom with Barber. Police had gone to the residence in order to effect the arrest of one of these other individuals, and with respect to Barber, "the state established *only* that the defendant was discovered in a room with large quantities of controlled substances." *Id.* at 344 (emphasis added). Our supreme court held that this fact, standing alone, does not make out a submissible case for possession of controlled substances.

In the instant case, the state established a great deal more than McCuin's presence in the bathroom where the marijuana was found. After voluntarily waiving his right to remain silent, McCuin admitted to Lt. King that he was acting as distributor of the marijuana found in the sink for another inmate. Based upon his cross-examination of Lt. King, McCuin now argues that King's notes of the interview do not specifically refer to the marijuana from the sink as that which he had agreed to distribute. However, King's testimony was clear that McCuin did in fact identify the plastic bag found in the sink as the marijuana he was selling for another prisoner.

In determining whether the evidence presented was sufficient to sustain a conviction, it is not our function to weigh the evidence. Instead, we accept as true all of the evidence and reasonable inferences which support the verdict and assess whether such was sufficient for reasonable persons to have found the defendant guilty. *State v. Brooks*, 618 S.W.2d 22, 23 (Mo. banc 1981); *State v. Kelly*, 539 S.W.2d 106, 109 (Mo. banc 1976). McCuin's admission, together with the other evidence which we shall now briefly review, was sufficient to sustain his conviction.

When Lt. Little entered the gymnasium bathroom, McCuin was bent over the sink where the marijuana was found with his hands in front of him. The plastic bag found in the sink contained almost nine grams of marijuana, and McCuin expected to be paid $100 by the supplier for selling it. McCuin was alone in the bathroom when Little discovered him over the sink, and it can reasonably be inferred that the marijuana in the plastic bag was of sufficient value that it would not have been simply abandoned by another inmate as McCuin initially claimed. Finally, as noted supra, the trace amount of marijuana found in McCuin's pants pocket is circumstantial evidence corroborating McCuin's admission that he was in possession of the marijuana for the purpose of selling it within the correctional center.

Judgment affirmed.